MOSES OLADELE ABIOLA

P.O. Box 3588, Santa Clara, California 95055

Telephone: (619) 307-5343

Facsimile: NONE

E-mail: abiola@inbox.com

Pro Se *(Plaintiff)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

San Francisco

| | |
|---|---|
| MOSES O. ABIOLA | )<br>) |
| Plaintiff, | )<br>) Case Number: **CV13-03496 JCS** |
| vs. | )<br>) |
| ESH STRATEGIES BRANDING, LLC<br>JAMES "JIM" DONALD in his official<br>Capacity as the C.E.O./Chief G.S.R.<br>OFFICER OF EXTENDEDSTAY HOTELS<br>HVM, LLC, d. b. a. EXTENDED STAY<br>HOTELS | ) Date: January 17, 2014<br>) Time: 1:30 P.M.<br>) Judge: **JOSEPH C. SPERO**<br>) Courtroom G – 15th Floor<br>) San Francisco Courthouse |
| Does 1 through 14, inclusive | ) Proposed 3rd Amendment to Complaint<br>) |
| Defendant(s). | ) COMPLAINT FOR DAMAGES FOR<br>) E.R.I.S.A. ACT OF 1974; FALSE<br>) ADVERTISEMENT; BREACH OF<br>) CONTRACT; INTENTIONAL INFLICTION<br>) OF EMOTIONAL DISTRESS, NEGLIGENT<br>) INFLICTION OF EMOTIONAL DISTRESS;<br>WRONGFUL TERMINATION;<br>VIOLATION OF CA. LABOR CODES,<br>CALUMNY |

**Demand For Jury Trial**

PLAINTIFF MOSES O. ABIOLA HEREBY SUBMITS HIS *"AMENDED PLEADINGS"* IN COMPLIANCE TO PAGE 2, LINE 8, OF "MINUTE AND CASE MANAGEMENT ORDER", DATED NOVEMBER 6, 2013. (Attached as supplemental exhibit A1)

.Plaintiff Moses Abiola hereby serves his 3rd amended complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff MOSES OLADELE ABIOLA alleges as follows:

## 1. **JURISDICTION**

1. This court has original jurisdiction under 28 U.S.C. section 1331, 1337(a), 1367 and 1441(a) or (b), over Plaintiff's First Cause of Action for violation of the ERISA because it arises "under the Constitution of the United States" (28 U.S.C. section 1331); and it also arises under an Act of Congress regulating commerce or protecting trade and commerce…."  (28 U.S.C. sections 1337(a)) and it also arise from California labor code Sections 2802. This Court has original jurisdiction under 28 U.S.C. section 1331, 1337(a), 1367 and 1441(a) or (b) of the U.S. Trademark Act, 15 U.S.C. sections 1051 et seq.


2.  Pursuant to U.S.C. section 1367(a), the Court has supplemental jurisdiction over the remaining causes of action arising under the California Labor Code, California Business and Professions Code; and allegation of these Codes:

   a. California Civil Code-Section 3294;

   b. California Labor Code Sections, 201, and 203 (a);

   c. 2802; California Code Section 1198.5;

   d. California Business and Professions Code 17500;

   e. California Business and Professions Code Section 14202(2) (i)(1)(2)

   f. Wrongful termination of employment

   g. Intentional infliction of emotional distress;

   h. Negligent infliction of emotional distress

   i. Calumny;

## II. **VENUE**

3.    Venue lies in the Northern District of California pursuant to 28 U.S.C. sections 1441 and 1446(a). This action originally was brought in the Superior Court of California, County of Santa Clara, and based on some of the questions; the case was moved to Federal District of Northern California.

4.    Intra-district Assignment:

Pursuant to Civil L.R. 3-2(c) the assignment of this case to this particular court was through consent of both representations of the Plaintiff, as well as of the Defendant for considerations of judicial economy and fairness.

### III    PARTIES

5.    Plaintiff, MOSES OLADELE ABIOLA is a man, alive and living (an upright creature having ability to formulate words, he possesses eyes that can see, ears that hear words, and nose for inhalation of oxygen, as well as for exhaling carbon dioxide; for which he is categorized as a member of the human race, with all rights to live endowed similarly to all living entities categorized as "Human", and existing on Earth by the same laws that chartered the existence of all corporeal substances.) At the time of this action, I reside in the City of Santa Clara, County of Santa Clara, in the State of California, in a nation known as the "United States of America".

6.    Plaintiff expressly state and indicatively declare that I am entitle to the relief herein requested based on unpaid wages, for pain, for suffering suffered by the hand of James "Jim" Donald, and based on the Charter and by-law of HVM, LLC which the Defendants was in control at the time of termination employment with the Defendant. These documents that are to be subpoenaed and the document submitted herewith as exhibit are sufficient set of facts as to prove to this Court of the existence of a fiduciary relationship between the Defendant and I. And, based on these facts, this Plaintiff is the beneficiary and the defendant(s) are fiduciaries. And, the sets of facts as herein stated, and as attached as exhibits will prove to this Court and

1

2
Jury that the Plaintiff sustained financial injury and mental harm has been done to him, and he is

entitle to relief as herein requested and more than requested.

3

4
7.    The defendant(s) and defendant individually and collectively are acting at the direction

5
of the defendant **James "Jim" Donald** who is the committer of the breach of fiduciary under the

6
corporate charter of HVM, LLC. The Defendant has fiduciary obligations to the Plaintiff who

7
was an employee under the corporate leadership of the defendant, and based on the responsibility

8
bestowed upon James "Jim" Donald as the Chief Guest Services Officers, and Chief Executive

9
among the Executive Officers of the entities named as does. The defendant(s) defrauded the

10
Plaintiff by their actions of failure to allow the Plaintiff to gain access to his employee file, and

11

12
failure to reimburse expenses, which interfere with Plaintiff's Right in pursuit of happiness as

13
endowed to him as a human, and as sanctioned to him by the constitution of the sovereign of the

14
United States.

15
8       Plaintiff is informed and believes and thereupon alleges that individual named

16
***James "Jim" Donald*** whose principal place of work is located at 11525 North Community

17
House Road, Suite 100, Charlotte, North Carolina 28277 is the Defendant in this action, as the

18
record indicates that he is the director and chief executive among the officers that oversees the

19

20
entity named H.V.M, Limited Liability Company, which was duly organized and registered in

21
the State of Delaware. And, at the time of this action, the entity was doing business in the State

22
of California under a fictitiously name of "EXTENDED STAY HOTELS"; and was doing

23
business under the laws of the State of California and the laws of the United States of America

24
during the acts of all omission and violation as herein alleged. And, at all relevant time and times

25
mentioned herein, was doing business in the City of Mountain View, in the State of California

26
where the Plaintiff was employed to perform a personal service of managing a hotel.

27
9.    Plaintiff is ignorant of the true names of other responsible officers and their aliases and

28
the capacities in which they might be involved in operations and business activities of the

defendant from October 17, 2011, to May 24, 2012 from which time was the cause of this action against the Defendant sued herein; and they are included as Does 1 through 14, inclusive, and doe 1 through 14 includes the chief executive officers named *James "Jim" Donald.*

10.   Plaintiff is informed and believes, and based thereon alleges that each of the individuals named are responsible, and *James "Jim" Donald* is the "ring leader" enjoined in concert by his subordinates and ask each of them to do things at his direction and he responsible for occurrences herein alleges, and that Plaintiff's damages were proximately caused by direct action of **James "Jim" Donald**.

11.   Plaintiff is informed and believes, and based thereon alleges that James "Jim" Donald is the chief executive officer, chief GSR officer, agents, servants, and employee of H.V.M. LLC, whose principal place of doing business was forth mentioned has herein. And, in doing the things hereinafter alleged, *James "Jim" Donald* was acting within the scope of his authority as servants, agent, and employees, and was doing things under direct permission, instructions and consent of all of the responsible officers herein sued as "Does" and at each time at the direction of James "Jim" Donald.

## IV <u>BACKGROUND</u>

12.   On July 29, 2012, Plaintiff filed a complaint with the office of the Labor Commissioner, Department of Labor Standard Enforcement, the defendants denies ever hiring this Plaintiff. The labor department complaint was for unpaid bonuses, and such was not resolved; and thereafter, Plaintiff's file an appeal at the California Superior Court for the bonus dispute, and such was adjudicated on October 30, 2013 in a bench trial. Due to the initial denial, While the issue of bonus was pending, Plaintiff locate an entity named "ESH Strategies Branding, L.L.C" which was uncover to be one of the "true" identities of operator of "ExtendedStay Hotels" and then, pursuant to CA. Labor Code 12960(2), a lawsuit was filed at

AMENDED PLEADING                    (NO.CV13-03496 JCS)

the Superior Court of the State of California in Santa Clara County naming ESH Strategies Branding, LLC as the defendant.

13.     Then, on or about July 29, 2013, the Defendant's counsel moved the case from State Superior Court to Federal Court citing venue for some questions. And, by moving the case to federal venue of Northern District of California, (San Jose); through general involvement, both parties consent to move the judicial proceedings from San Jose, California to the San Francisco area of Federal District, (which is home office, and origin of Defendant's representing counsel "*Littler Mendelson", P.C.* since 1942). The case now judicially resides in San Francisco, California with judicial bearing of number **CV13-03496 JCS**, before the Honorable Joseph C. Spero.

## V.     PRELIMINARY ALLEGATIONS

14.     Plaintiff, a male of African descent, began employment as a Hotel Manager on October 17, 2011 as "at-will" employee with the Defendant; and was a Hotel Manager on May 23, 2012, or May 24, 2012 when he was discharged wrongfully from employment. On or about September 29, 2011, at the instruction of the Defendant, an advertisement was featured on the electronic media refer to as "On-line". The Defendant was soliciting those that are cunning in the art of managing hotel and desiring to be employed as hotel manager to apply for such position. The Plaintiff visiting an ill relative in Santa Clara (from San Diego) at that time, and having been employed and work in position as a General Manager for more than 15 years at that time, decided to apply for the job. Wherefore, on the publication page, the following terms embodied the terms used in the advertisement; "ACCOMMODATION-NO; BONUS PLAN, YES"; and such terms were used in the publication without any applicable restrictions advisory; and the transcript is herein restored, (See Exhibit A.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15.     In respond to the said advertisement; the Plaintiff applies for the job based on years of experience required. The Plaintiff believes full well based on the explicit content of the advertisement that if employed by the Defendant, he could not expect the Defendant to provide accommodation, as the advertisement clearly stated so; and such was never asked, favored, nor expected to be among obligations of the Defendant to the Plaintiff. Whereas, the Plaintiff believes that there could not be any condition whatsoever, if employed based on the terms used in the advertisement, that may cause the criteria for earning such bonus not to be disclosed in writing on the day the job was offer and accepted by the Plaintiff, or at an appropriate time, nor would a written narrative of such benefit plan and its applicable analysis not be provided to the Plaintiff within 90 day of employment, as a requirement under multiple employer welfare arrangement of Employee Benefit Security Act Title-1, ruled under Federal Disclosure Act of 1974. And, the advertisement offers no restrictions whatsoever pertaining to the promises of offers made on the advertisement.

16.     Shortly after applying for the position on the electronic media, ("online"); a set of the Employment Application was transmitted to Plaintiff through electronic mailing system refer to as "email". The application consists 4 pages, and a question that was asked on the fourth page of the application, in which an applicant was require to answer (on September 29, 2011) prior to being considered for possible employment, is forbidden under title VII of the Civil Right Act of 1964; nonetheless, no cause for action is warranted of the Defendant in that issue, as the Plaintiff forgives the Defendants and no punitive or grievance is desired nor included in this action for that matter, (See Exhibit B)

17.     Few weeks thereafter, the Plaintiff received a telephone call from a person claiming to represent the beneficiary of the advertisement, named Rama Alvarez, (hereinafter Rama); she introduces herself to the Plaintiff as the "Regional Director of Operation",(RDO); and she told the applicant (herein Plaintiff,) to report to the address at 190 E. El Camino Real, in the City of

1  Mountain View, in the State of California for an interview, (the address and location hereinafter,

2  refer to as the Property.)

3      18.   Upon the Plaintiff's arrival to the property, the insignia mounted physically which

4  identifies the business being conducted at the property bears the fictitious brand of "Homestead

5  Studio Suites Hotels". And then, a human being with descriptive feature, likeness and anatomy

6  of a woman introduces herself to the Plaintiff as Mrs. Brandalyn Kay Sickles; (hereinafter

7  *Sickles*,) as the "resident manager"; and alleges that she will be conducting the interview,

8

9  whereas Rama was not present. Thereafter, Sickles provides the Plaintiff with a release form for

10 signing to allow background investigation, and prior employment references; and the Plaintiff

11 signs the document instantly. Wherefore, few days later; after such administrative clearance was

12 completed to the Defendant's satisfaction, the "applicant" ("Plaintiff") was notified to report for

13 another interview; and it was on this occasion that the Plaintiff was employed to begin work on

14 October 17, 2011; and Plaintiff begin working on October 17, 2011, at or about 9:00 After

15 Morning of Pacific Time.

16

17     19.   On the day of the interview, while the interview was in progress, Sickles indicated

18 to this Plaintiff how delighted she was of the Plaintiff's prior experience that encompasses

19 property upgrades, as such was needed mostly at that time to work with the contractors during

20 the upgrade that was to begin shortly at the property. And, the immediate responsibility of this

21 Plaintiff was to supervise the entire upgrade, therefore coordinating the entire effort from start to

22 finish, and the entire scope of renovation and grand re-opening was completed amid April of

23 2012. During the process; the newly appointed "Chief" Executive Officer named Mr. James

24 "Jim" Donald; as well as the departing "Chief" Executive Officer named Mr. Gary DeLapp

25 visited the property at a different time, as the property was among the first series to be renovated

26 in the nation.

27

28

20.    On October 17, 2011, Plaintiff's first day of work, "Sickles" provided me with documents needed for a new employee; and among them was a document titled "Employment Notice", hereto attached as *Exhibit C*. On Exhibit C, the Plaintiff observed that the scripted letter atop the document was "Extended Stay Hotels", whereas the insignia mounted on the property bears a different name. And then, on *Exhibit C*, Plaintiff observed line 4 itemized as "OTHER COMPENSATION" which was sub-itemized as "BONUS:" "EXPENSES:" "OTHER:" And then, the Plaintiff query Sickles of a brochure that might explains corporate policies as well as criteria for earning the bonus. Then, Sickles responded that, *"well, no brochure, but this is what I can promise you, as a hotel manager with Extended Stay Hotels, you can average your bonuses to be very huge, as long as you report for work when scheduled, you'll be paid your bonuses, the last time I got mine, it was so robust that I almost cry"*.

21.    Then, the Plaintiff was reluctant by leaving the pen on the table and lean backward briefly on the chair; and at that point, Sickles instructed the Plaintiff to sign the Employment Notice by saying that *"signs this document, because I cannot employ you if you do not sign all documents completely"*. And at that point, the Plaintiff recognized such verbal threatening instruction as an order, and such order incite a duress that forced the Plaintiff to accept the employment offer and signing all of the remaining documents under such duress state of mind; for noncompliance to such verbal threatening instructions would have jeopardize and destroy this Plaintiff's opportunity to receive benefit of being employed. And then, upon Plaintiff's arrival home on October 17, 2011; in discussion testimony to the *"Huge-Bonus"* as declared by Sickles; *(See Exhibit D, an attestation of discussion regarding salary scale in County of Santa Clara, in comparison to the Plaintiff's home County of San Diego.,* (document redacted for record privacy.))

22.    Plaintiff signed the "Employment Notice" at that moment for lack of meaningful choice to gain the employment as it was being offered, and Plaintiff possesses no other capacity

to compel "*Sickles*" to write the oral contract on the Employment Notice notwithstanding, the Plaintiff believe that oral promissory made by Sickles was to be held in good faith. By signing such notice without a declaration under mental duress, since that time triggers a condition that leads to repetitive emotional pain which the Plaintiff is yet to recover.

23   (a) On Exhibit C, Plaintiff also observes an instruction on the lower portion which reads, "*Make a copy of form. One copy in personnel file and the other give to the associate*". But regardless of such instruction, a copy was never provided to this Plaintiff throughout the time of employment with the Defendant; and when such was requested from Sickles, verbally, as well as in writing, the Plaintiff was never provided with such document whatsoever, a violation of public policy-California labor code 3209. Plaintiff believes that if such document was provided when requested; he would have sought advice of a lawyer while still employed by the Defendant. Exhibit C further declares: *"Any changes in these terms shall be made in writing and at least seven (7) days before they become effective".*

Therefore,

   **(b)** termination of employment that was done on May 24, 2012, was changing term (of employment) from active to inactive employment, therefore Defendant's termination should not have occurred on the May 24, 2012 if the 7 days written notice embodying the Employment Notice which is Defendant's own administrative policy was provided to the Plaintiff.

   **(c)** Defendant's failure to provide such 7 days written letter to the Plaintiff was done purposely to jeopardize and destroy the Plaintiff's opportunity to receive benefit of being employed, and becoming unemployed through the act of the Defendant jeopardize and destroy the Plaintiff's opportunity to receive the benefit associated with an employed person.

   **(d)** Wherefore, Defendants' failure to provide the Plaintiff with 7 days written notice of its intention to changes active employment status, to become non-active status through termination

of employment was negligent breach of contract; and deliberate breach of terms of employment as signed between Plaintiff and Sickles on October 17, 2011.

(e). The declaration on Exhibit C, such as "NORMAL HOURS OF WORK, FULL-TIME, PAYDAY" as numbered from 1 to 6 are related terms that binds certain contractual obligation between the Plaintiff and the Defendant; whereas, without these terms, there could be no obligation of work to receive salary that exist between the Plaintiff and the Defendant during the employment that leads to this action. And, after 90 days of employment has passed, and the Plaintiff was not provided with written copy of bonus Plan as required by Employee Retirement Insurance Security Administration (which governs all employees benefit Plan), a request was made by this Plaintiff of his desire to review his employment file; such request was denied on each occasion with statement by sickles that: "there is nothing in your employment file for you to see"; and denying employee access to his or her employee's file when requested is **violation of** (Public Policy), **Labor Code section 1198.5,** and such act was intentional negligence, and reckless act that has led to emotional distress, insomnia, suffering and financial harm that have injured the Plaintiff and cause him to suffer. For lack of access to employment file rendered the Plaintiff clueless of all matters pertaining to the scope of work and work relativities-thereby making termination under "performance" wrongful in all dynamics.

(f) The Plaintiff's denial of access to his employment file makes him ignorant of all work and working related conditions or guidelines that may have existed. Whereas if access to the employee's file was granted to the Plaintiff, he would have initiated a dialogue, a method, seek advice, learn, ask a neighbor, seek employment lawyer's advice to understand all applicability to his employment condition, status, as well as other obligation that may exist in working for the Defendant.; Because, the Plaintiff will not have accepted the job offer under "at-will" status

without a much higher salary scale; as most of the hospitality provides bonus benefit without metrics stipulation.

(g) Defendants' failure to provide the Plaintiff with 7 days written notice of their intention to change Employment status from active employment to non-active employment as agreed to on the Employment Notice, was intentional negligence, and reckless act that has caused emotional distress, insomnia, suffering and financial harm that have injured the Plaintiff and cause him to suffer. On Sickles termination document titled "Change Notice", on the box captioned "Termination", an administrative question was asked of Sickles that;

"WAS WRITTEN 2-WEEK NOTICE GIVEN?" Sickles' answer was "NO" (See Exhibit E)

(h) Therefore, Sickles intentionally denies the Plaintiff the administrative due process, and hastens to terminate the Plaintiff to prevent him to meet certain criteria applicable to employment.

(i) On Exhibit E Sickles was asked again that, WAS 2-WEEK NOTICE WORKED? Her answer was NO, again intentionally denying the plaintiff due process that was provided to others.

(j) Defendant terminates an employee without following its internal rules and policies are outrageous and reprehensible act. Exhibit C and Exhibit E were transmitted by Sickles to the Defendant's home office for approval, but the responsible **James "Jim" Donald** and those that are acting in concert with him failed to intervene to stop Sickles from performing such willful act of gross negligence and reprehensible act, and his failure to act.

(k) The Plaintiff was subjected to work under a condition they know full well, or should have known with reasonable care that they are in violation of the <u>US Trademark Act of 1946, 60 Stat. 427, U.S.C. 1051 et. seq.; and code Section 2.65</u>., by Defendant's failure to provide the Plaintiff with <u>compliance letter</u> pursuant to U.S.C. Trademark Code 2.75(b), when the company changed insignia from "Homestead Studio Suites Hotel" to "Extended Stay Hotels".

(l) The Defendant underlines California Code Section 14202, (h, 2.); and yet, the Defendant subjected the Plaintiff to managed a facility that displayed an expired trademarks, by having the Plaintiff "manager" renting accommodation to general public in violation of the Model State Trademark Law. (See Exhibit F). Throughout the cause of this action, the property operates, and communicates with the Plaintiff with general public in some manner with three brands names, and only one was in compliance with California Model State Trademark Laws, (California Code Section 14202, (h, 2.)), and because the Plaintiff has work under the non-compliance as mentioned, Plaintiff's 20 years stainless reputation in the hospitality industry has been jeopardize and destroyed, defamed, and Plaintiff's opportunity to repair his image and regain prominence and obtain employment in the industry is known to be very slim.

Model State Trademark Law of California, (under Business and Profession) Code Section, 14202 (h, 2.), the correct registered trademark suitable for use, as well as in communicating, and to identify the business was ***"eExtended Stay Hotels"*** *(See Exhibit F).* And during the cause of this action, Plaintiff was subjected to have worked under these violations; and reflecting on such condition causes regress of emotion, painful memory, and sorrow.

(m.) Under ERISA title 1, (Basic Disclosure Requirement), it is a requirement for all Benefit Plan providers to provide detail of plans to participants in hardcopy writing, within 90 days of such commitment; and Defendant failure to provide such document as so stated, violates ERISA Title 1, Basic Disclosure Requirements, Code 29CFR^250.1049-8 and 2520.104b-1

## VI   CONDITION of WORKING

24.  (a)  Plaintiff begin employment with the Defendant on October 17, 2011; and up till few months later, the insignia mounted on the property was *Homestead Studio Suites Hotels* and such fictitious name was registered trademark in good standing at that time. All standards applied to managing the property were applicable to such fictitious brand. Therefore, all

customers that patronize such fictitious brand expect services in a certain way that they have accustomed to under the brand. And then, on or about late December of 2011, a portion of the property upgrade was completed through this Plaintiff's guided supervision. And then, there was an instruction from Defendant through Sickles to this Plaintiff, to apply service standard of a new brand which its insignia was not yet mounted on the property.

(b)  The instruction from Sickles includes new customer service greetings and etiquettes for "*eEXTENDED STAY HOTELS*" brands, even though; insignia for such brand was not yet mounted on the property. Which mean that the services accustomed to by all clientele through trademarks recognitions were abruptly changed without notification, and such action causes series of customer complaints to the corporate's head office, and the negative feedback was now being impugned on the manager who is this Plaintiff.

(c)  BRE Homestead Village, LLC, operates the brand of "Homestead Studio Suites Hotels" and such company is also Delaware limited liability Company duly organized and existing with its own rule of charter, and maintaining yearly minutes. Whereas, *ESH Strategies Branding,* is a limited liability company ("L.L.C."), duly organized and existing with own rule of charter, and maintaining yearly minutes. And, each of these entities operates fictitious brands pertinent to their chartered names. And, under certain corporate arrangements, these entities affiliates and collectively controlled by H.V.M. L.L.C. Then, there was a verbal instruction from Sickle (to this Plaintiff,) to swap service standard of one brand for another brand; which includes differential in telephone greetings, etiquette and services. (*Example: Continental Breakfast provided under Extended Stay Brand, no continental breakfast provided under Homestead Studio Suites.*)

(d) Then, Plaintiff requested for declaration authorization issued by each entity regarding clarification liability for infringement, trademark, service mark, release and copyright, from all entities involved as they are all individually registered entities with own corporate charter; nonetheless "Sickles" was not able to provide this Plaintiff with any information, nor prove to this plaintiff of existence of a written order to that effect, and seems not to possess knowledge of my request. And, through experience, and matter of state code, swapping service of one brand for another is a violation of U.S.C. Trademark Code 2.75(b). *(Example: Pouring Cola-Kola drinks in the bottle of Pheppsi and advertises it as "Cola-Kola").* And, managing the Defendant's property under such condition at the direct order of James "Jim" Donald was against the Plaintiff's will. And, even though the Plaintiff informed Sickles, (as well as Rama) that such business practice is wrong, there was no respond nor shows of concern. Afterwards, instead of addressing the issue, their resolve was to adapt a scheme to save their own job, by ridiculing this Plaintiff with bogus action plan initiative.

(e)  Plaintiff has performed, by showing up for work, and performing the work of supervising the property upgrade perfectly; and at the time of hire, there was no declaration to what translate to performing the job, rather than to perform the job. Any metrics which the property achieved was a direct result of *James "Jim" Donald*. Any metrics which the property did not achieve was a direct result of James "Jim" Donald direction of operating the property.

(f) The entire scope of the property upgrades that were assigned to be the primary focus was accomplished on timely manner with merit. And when the rudimentary aspects being done by Sickles as well as Rama was not being coordinated properly, their resolve is to charge the Plaintiff with performance issue; and replacing managers every few months does required Sickle to stay, recruit, and train another manager thereby reinventing her role and keeping her job.

 (g) All code violations, failure to allow Plaintiff to view his employment file, delegitimize the Defendant business standing to have been able to impose any disciplinary

measure on the Plaintiff in any manner. Because during the course of this action; The Defendant, knew that operating business with code violation were wrong, and his practices of lack of disclosure of benefit entitlement to the Plaintiff was wrong, but James "Jim" Donald did nothing to stop it.

   (h.) The <u>Defendant violates California Labor Code 2802</u>, for failure to reimburse:

1. **Unpaid mileages**, (commuting within the county for upgrade related activities),

2 **Unpaid Mileages** for rudimentary support and other related errand

3. **Unreimbursed use of personal fund** to purchase article which support and improve the overall image of the Defendant's business, (See Exhibit G)

   4. Unreimbursed use of personal reserve to purchase long-distance telephone card for a guest from England named **Mr. Leslie Cook** (of Tesla Motors), who was having difficulties to use the room's telephone line due to calling restrictions associated with swapping of brands standard and procedure. These are steps encouraged in order to keep "key-accounts" that were being loss due to inconsistence in brand advertised versus service provided. These incidental amounts are minimal, but were encouraged by "Sickles", but when reimbursement was requested, she refused to pay, and the Plaintiff sees no justification to use any personal reserve to pay for operating cost for defendant while being schemed of work related benefits. The unreimbursed amount is now considered an "investment" that has added value to the image and overall operations of the Defendant's business, and continue accrued substantial dividend until paid.


   25.                      **VII. <u>BREACH OF CONTRACT</u>**


   1) **Written Contract,** according to Employment Application, (Exhibit B)

   2) **Written Contract** according to Employment Notice, (Exhibit C)

3) **Existence of Terms of Agreement** declared in the *"Statement of Decision after Court Trial",* (See Exhibit H)

4) **Implied Contract** (Obligation of work in exchange for monetary salary.)

5) **Implied Contract**; Defendants fails to provide the Plaintiff with 7 days written notice of their intention to change Active Employment status of the Plaintiff, to Non-active.

6) Violation of California Business and Professions code section 14200-14202 ;(a) 14202-advertising falsely is a breach of fiduciary to the general public, the Plaintiff is a member of the general public who was fiducially harm through the breach by loss of employment.

## . VIII   WRONGFUL TERMINATION

26      Termination of Plaintiff's employment with Defendant was done in violation of public policy of fiduciary expected of the Defendant as a proprietor of a lodging facility. The Defendant who employs the Plaintiff, <u>have fiduciary obligations to its Customers</u>, such fiduciary was delegated to the Plaintiff to upholding such fiduciary obligations while performing his duties. Defendant broke these fiduciary trusts when: **1. Operates with an expired Trade Mark. 2. Swapping of one brand for another.**  These conditions create circumstances that decreased expected expectations for the property, and such leads to denigration of equitable milieu used in Plaintiff's ranking that lead to termination of employment.

## VIV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

27.      (a). Defendant intentionally required the Plaintiff to sign documents that she knows full well lacks declaration on certain portion, and she knows full well that such lack of declaration may jeopardize and destroy the Plaintiff's opportunity to applicable benefits, and such nondisclosure leads to financial loss to the Plaintiff; and such condition was known to James

1  "Jim" Donald, but he fails to nothing to correct such act. The result of such lack of action lead to

2  inability to attain certain benefit, and such leads to emotional distress for the Plaintiff.

3      (b). Defendant intentionally required the Plaintiff to sign documents that she knows full

4  well that lack of declaration on certain portion, and such nondisclosure was intentional, a pre-

5  determined scheme to defraud the Plaintiff, and the plaintiff was defrauded by non-compliance to

6  the 7 days required to change active employment to non-active.

7      (c). During the first 120 days of employment, part of the morning routine assigned to the

8  plaintiff was to open the save vault and verify the previous night shifts deposits; and throughout

9  that time, Sickles intentionally provides the Plaintiff with wrong combination numbers to open

10  the save; but required the Plaintiff to open such upon arrival at work each day. While the

11  Plaintiff attempt to open the safe, she'll then call the attention of subordinates to share jokes of

12  "their manager's" (herein Plaintiff's) inability to open an "ordinary" save; knowing full well that

13  the combination provided for such task was wrong. And after an hour plus of attempt to operate

14  the save, Sickles will then come around and "open" the save, thereby establishing false

15  incompetency of the Plaintiff. This condition was not known to the Plaintiff, until a task-force

16  manager named *"Janice"* made a brief stop at the property one morning, and while the Plaintiff

17  was attempting to open the safe, she intercepted and inquire of the Plaintiff of the combination in

18  use, she verify to the effect of the combination in my possession was incorrect; and then,

19  provides the Plaintiff with correct code number needed to open the safe successfully.

20

21      (d). Plaintiff's cause for action arise from employment relationship with Defendant. And by

22  soliciting certain obligations with the general public/consumer; the Defendant knew that there

23  may be a condition associated with his business practices that a consumer may take into

24  consideration before seeking the obligation that the Defendant desired. And the Defendant's

25  failure to advise consumer of possible restriction pertaining to claims made on the advertisement

are willful act, and such failure to inform a consumer is a willful negligence, and has caused a financial loss that leads to emotional distress for the Plaintiff.

### 28          X          CALUMNY

(a)     During the course of this action, the Defendant operates the property under and Federal, State and local code violations. The Plaintiff was terminated for "performance", whereas, such condition has characterized the Plaintiff with the Defendant as "ineligible for rehiring"; and such ineligibility was based on false pretenses as cited in this pleading; and such condition defames the good reputation which the Plaintiff has built over the past 20 years.

(b) As a result of Defendants' acts or reprisal, as alleged herein, Plaintiff has no plain, adequate, or complete remedy at law, and Defendants continue to engage in such alleged wrongful practices. Therefore, Plaintiff requests that Defendants their agents, employee, and those acting in concert with them, be enjoined permanently from engaging in the unlawful practices as set forth herein.

(c). As a proximate result of Defendants' acts against the Plaintiff as aforementioned, Plaintiff demands judgment against all Defendant(s), and each of them, for damages, including compensatory damages, for emotional pain and suffering, reimbursement of time and expenses associated with the case, costs of suit, prejudgment interest, including attorney, and or attorney-in fact research time and fees. The Plaintiff demand for relief as set forth below:

### FIRST CAUSE OF ACTION: 1974 E.R.I.S.A. USC 1001

29.    Lack of disclosure of benefit declaration in 90 days

**Type of Information**: (a) Primary vehicle for informing participants and beneficiaries about their PLAN and how it operates; Must be written for average participant and be sufficiently comprehensive to apprise covered persons of their benefits, rights, and obligations under the plan. Must accurately reflect the plan's contents as of the date not earlier than 120 days prior to the date the Summary Plan Description is disclosed.

The Document: "The plan administrator must furnish copies of certain documents upon written request and must have copies available for examination. The documents include the latest updated Summary Plan Description, latest Form 5500, trust agreement, and other instruments under which the plan is established or operated".

To Whom:

Participants and beneficiaries and persons with the right to obtain the Summary Plan Description upon request

When?

Automatically to participants within 90 days of becoming covered by the plan and to pension plan beneficiaries within 90 days after first receiving benefits. However, a plan has 120 days after becoming subject to ERISA to distribute the SPD. Updated SPD must be furnished every 5 years if changes made to SPD information or plan is amended. (See 29 CFR § 2520.104b-2)

**30   SECOND CAUSE OF ACTION False** Advertisement; California Code section 17500

By making promise of bonus benefit in an advertisement on the internet, and concealing the matrix to the consumer "Job Applicant"

The False Advertising Law

**California's false advertising law (§ 17500 et seq.)** makes it "unlawful for any person, corporation, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services **or to induce the public to enter into any obligation relating thereto, to make or disseminate before the public in this state, in any newspaper or other publication or in any other manner or means whatever any statement, concerning** that real or **personal property or those services which is untrue or misleading,** and which is known, or which by the exercise of reasonable care should be known, to be untrue or

misleading." (§ 17500.) Violation of this provision is a misdemeanor. As with the UCL, <u>an action for violation of the false advertising law may be brought either by a public prosecutor or by "any person acting for the interests of itself, its members or the general public," and the remedies available to a successful private plaintiff include restitution and injunctive relief. (§17535.)</u>

**31.  <u>THIRD CAUSE OF ACTION</u>:  <u>Three Categories of Breach of implied contract</u>** under California <u>**Civil Code-Section 3294**</u>, entails the following:

1. <u>**by Oppression.**</u> (Defendant denies Plaintiff's request to review his employment file)

2. <u>**By Fraud**</u> (Change the date May 18, 2012 to May 16 2012)

3. <u>**By Malice**</u> (Defendant provides incorrect passcode, and includes such on Plaintiff's daily work routine, and calls subordinate to share jokes  when plaintiff attempts to operate the combination of safe.)

4. Under the "<u>Other Compensation</u>" as listed on the "<u>Employment Notice</u>" as implied-in-fact, the Plaintiff is entitles to:

"Bonus Pay", "Expenses", "Other", these terms were agreed upon through (the Plaintiff and Defendant's representative's) signatures that by the signatures of both parties creates a binding implied contractual obligations, and such obligations was breached by the Defendant through the application of itemized 1, 2, and 3; therefore the Plaintiff is due for compensation for lack of declaration on each. *(The bonus matter was adjudicated on October 30, 2013.)*

The Law:

"(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of <u>oppression</u>, <u>fraud</u>, or <u>malice</u>, the Plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

**32.   FOURTH CAUSE OF ACTION:**  California Civil Code-Section 3294 Breach of the totality of implied contract that was reached and agreed upon on the document *"Employment Notice".*

Under the captioned "Other Compensation" as listed on the "Employment Notice" signed becoming implied-in-fact contractual obligation, the Plaintiff is entitles to the following two itemized: "Expenses", "Other", these terms were agreed upon impliedly through the Plaintiff and Defendant's representative's signatures, and was breached through defendant's reckless act and omission. "Bonus" "Expenses" and "Other" might have been inputted if the Plaintiff was allowed to view his employment file and initiate a dialogue with a responsible official, but such condition was jeopardized and destroyed for lack of access to employment file. Therefore, the Plaintiff is due is for substantial compensation for each itemized for lack of specific declaration on each itemized caption.

The Law:

"(a)In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

**33.   FIFTH CAUSE OF ACTION**: Willful violation of California Labor Code 203 (a)

Plaintiff was authorized to use personal reserve to pay for name tag, and incurred mileage and such was not reimbursed when demanded. And unpaid wages, (See Exhibit K)

The Law

(The application here of the ordinary definition of "willful" is supported by the judicial construction of) Labor Code section 203, subdivision (a), which provides in relevant part: "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until

paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (Italics added.) "The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done".

*(Amaral v. Cintas Corp. No. 2 (2008) 163 Cal.App.4th 1157, 1201)*

Using personal reserve to purchase name tag and not reimbursed upon request is a violation of California Labor Code 2802; mandatory reimbursement under (Labor Code Section 2804) Existing statute specifies that any contract or agreement, express or implied, made by an employee to waive these benefits is null and void.

(The Law)

"Existing statute provides that an employer is required to indemnify an employee for all necessary expenditures or losses incurred as a direct consequence of performing his or her duties, or of his or her obedience to the directions of the employer as specified (Labor Code Section 2802)." (See Exhibit G)

**34.  SIXTH CAUSE OF ACTION**: California Labor Codes 1198.5

Preventing the Plaintiff to gain access to his employment file when requested verbally and in writing, (See Exhibit I)

The Law:

   Every current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee. (b) (1) the employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days

from the employer's receipt of the written request. Upon a written request from a current or former employee, or his or her representative, the employer shall also provide a copy of the personnel records, at a charge not to exceed the actual cost of reproduction, not later than 30 calendar days from the date the employer receives the request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to produce a copy of the records, as long as the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request. Except as provided in paragraph (2) of subdivision (c), the employer is not required to make those personnel records or a copy thereof available at a time when the employee is actually required to render service to the employer, if the requester is the employee. (2) (A) for purposes of this section, a request to inspect or receive a copy of personnel records shall be made in either of the following ways: (i) Written and submitted by the current or former employee or his or her representative. (ii) Written and submitted by the current or former employee or his or her representative by completing an employer-provided form. (B) An employer-provided form shall be made available to the employee or his or her representative upon verbal request to the employee's supervisor or, if known to the employee or his or her representative at the time of the request, to the individual the employer designates under this section to receive a verbal request for the form.

Through Exhibit "I" Defendant refuses to comply with this law by its failure to grant access to employee file when requested both in writing and verbally.

## 35. <u>SEVENTH CAUSE OF ACTION</u>:

Intentional Inflictions of Emotional Distress

The conducts of the Defendant were malicious, oppressive, and the fraud is outrageous. The Defendant's conducts that lead to the Plaintiff's emotional distress was that the Defendant's engaged in malicious act by intentionally providing wrong code combination to operate the save vault as well as terminating the Plaintiff without following its internal policies, as well as lack of

disclosure of employees benefit, and intentionally fails to write declaration on the employee notice. Oppression-by denying the Plaintiff access to view his employment file, and for terminating the Plaintiff with falsified information, these are outrageous acts that have caused injuries to the Plaintiff; even though these injuries are not apparent to the eye, they are just too great to justify.

**36.   EIGHTH CAUSE OF ACTION:**

Defendant commits violation for Negligent Inflictions of Emotional Distress:

The conducts of the Defendant were malicious, oppressive, and the fraud is outrageous. When the Defendant carried out the acts of Oppression, Malicious, and Fraud, omission, and lack of disclosures, they knew, or with reasonable care they should have known that their act will cause injuries and pain to the Plaintiff, and yet, the Defendant's negligently preceded in the act that has led to the Plaintiff's injuries.

**37.   NINTH CAUSE OF ACTION:**

Violation of California Business and Profession Code Section 17500-False Advertisement

(This line item was) brought forth by the Plaintiff under (Unfair Competition Law) UCL 17204; as a citizen of California, on behalf of the Citizens of the State of California.

The Defendant engaged in false advertising, by advertising a high standard of Brand on the internet and upon purchasing such, consumers arrived at the property only to be provided with service of less standard.

The Law:

California's Unfair Competition Law ("UCL"), Business & Professions Code Sec. 17200, was designed to protect competitors and consumers from illegal, fraudulent, and "unfair" business practices, and Business & Professions Code Sec. 17500 prohibits false advertising. By making an online advertising of a brand standard, and upon the consumer purchase of such brand online,

only to get less quality service as opposed to the brands advertised, such practices is unfair business practice to consumers.

**38. <u>TENTH CAUSE OF ACTION</u>:**

   Violation of California Business and Professions Code, C 14202(2)(i)(1)(Model State Trademark Law) against the defendant. The Defendant engaged, in continuance use of expired trademark for advertising and for conducting business in the state of California. And, such act of omission creates circumstances that have cause actual economic injury to the Plaintiff, and to the citizens of state of California who might have patronized the business during the time.

The Law:

(a) "Trademark" means any word, name, symbol, or device, or any combination thereof, used by a person to identify and distinguish the goods of that person, including a unique product, from those manufactured or sold by others, and to indicate the source of the goods, even if that source is unknown.

(b) "Service mark" means any word, name, symbol, or device, or any combination thereof, used by a person to identify and distinguish the services of that person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown. Titles, character names used by a person, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor.

(c) "Mark" includes any trademark or service mark entitled to registration under this chapter, whether registered or not. (d) "Trade name" means any name used by a person to identify a business or vocation of that person.

(e) The term "person" and any other word or term used to designate the applicant or other party entitled to a benefit or privilege or rendered liable under the provisions of this chapter includes a juristic person as well as a natural person. The term "juristic person" includes a firm, partnership,

corporation, union, association, or other organization capable of suing and being sued in a court of law.

(f) "Applicant" means the person filing an application for registration of a mark under this chapter, and the legal representatives, successors, or assigns of the person.

(g) "Registrant" means the person to whom the registration of a mark under this chapter is issued, and the legal representatives, successors, or assigns of the person.

(h) "Use" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For the purposes of this chapter, a mark shall be deemed to be in use if it is used on either of the following:

- On goods when it is placed in any manner on the goods or other containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes that placement impracticable, then on documents associated with the goods or their sale, and the goods are sold or transported in commerce in this state.

- On services when it is used or displayed in the sale or advertising of services and the services are rendered in this state.

(i) "Abandoned" means either of the following has occurred:

- A mark's use has been discontinued with intent not to resume that use. Intent not to resume the use may be inferred from circumstances. Nonuse for two consecutive years shall constitute prima facie evidence of abandonment.

- When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to lose its significance as a mark.

(j) "Dilution"

(3) Actual economic injury.


**39.  ELEVENTH CAUSE OF ACTION**:

1

2

Violation: <u>Wrongful Termination</u>

3

(a)   The defendant terminates the Plaintiff and classified him as a non-eligible for rehiring, and

4

such ineligibility was based on false entries to the employment file. The conditions used by the

5

Defendant to determine performance were fraught with misrepresentation, fraud, malice,

6

oppression, and even violation of its own internal rules. These conducts of the Defendant are

7

outrageous, the defendant has the opportunity to stop it, but they did nothing to stop it.

8

Terminating an employee with these outrageous acts makes the termination of Plaintiff's

9

employment was wrongful. <u>The Defendant violates California Labor Code Section1198.5;</u>

10

<u>California Labor Code Sections 203.a</u>

11

(b)      Termination of Plaintiff's employment based on "Performance" was wrong pursuant to

12

reasonable accommodation because the Plaintiff makes it clear to the Defendant representative

13

on the day of accepting the employment of his use of prescribed medicine, that causes certain

14

condition as disclosed on the medication label, and such was disclosed to the Defendant again on

15

January 1, 2012 in the employment enrollment application, submitted to the Defendant,

16

indicating (through declaration on the medical application) that accommodating of such side-

17

effect is to be  considered in all aspect and resolution. And lengthy exposure to the sunlight at the

18

direct order of the Defendant during the renovation makes the matter worsen, and the Plaintiff

19

still suffers till this day as a direct result of the condition of work. *(See Exhibit L)*

20

21

22

**40.  <u>TWELVETH CAUSE OF ACTION</u>**: Calumny, (Defamation) the defendant terminates

23

The Plaintiff and classified him as "non-eligible" for rehiring, and such ineligibility was

24

based on false entries of invalid performance data, and such has becomes a platform for

25

continuous slander through negative references of the Plaintiff by the defendant, ignoring the

26

medical condition that was well stated when hired and during employment, and yet, defaming the

27

28

plaintiff's  good reputation of record-earned over the past 20 years in hospitality industry by providing false references to potential employers.

<u>FIRST</u> Cause of Action: (E.R.I.S.A. Of 1974, Under Code Sections 29 USC.1001

<u>SECOND</u> Cause of Action: (False Advertisement) –Against all Defendants

<u>THIRD</u> Cause of Action:  (California Civil Code-Section 3294-Against all Defendants

FOURTH Cause of Action: (California Civil Code-Section 3294 – Against all Defendants

<u>FIFTH</u> Cause of Action: CA Labor Code Sections, 203 (A); 2802; - Against all Defendants

SIXTH Cause of Action:  California Code Section 1198.5 –Against Defendants

<u>SEVENTH</u> Cause of Action-Intentional Inflictions of Emotional Distress-Against all Defendants

<u>EIGHTH</u> Cause of Action: Negligent Infliction of Emotional Distress – Against Defendants

<u>NINTH</u> Cause of Action: CA Business and Professions Code 17500–Against All Defendants

<u>TENTH</u> Cause of Action: CA Business and Prof. Code Sections 14202(2) (I) (1)-Against Defendants

<u>ELEVENTH</u> Cause of Action: Wrongful Termination, against all Defendants

<u>TWELFTH</u> Cause of Action: Calumny (Defamation)-Against all Defendants

For all counts, Demand for compensatory damages, and or Demand for pain and suffering, and or Demand for exemplary damages sufficient to punish and deter, and or Demand for prejudgment interest, and or Demand for reasonable attorney, and or party without attorney's Totaling, *$1,068,320.78* (See Relief analysis, Exhibit J).


WHEREFORE, for the reasons contains herein, Plaintiff Prays for relief in the amount as herein stated, or as justifiable reasoned by the Court.

Pursuant to Federal Rule of Civil Procedure 38 (b) Plaintiff demands for Jury Trial.

Respectfully submitted on January 10, 2014

/s/ Moses O. Abiola_____
MOSES O. ABIOLA
Pro Se